## ANN BEERS

### v.

## LEONARD MYERS, ADMINISTRATOR.

*Administration—Guardian's Estate—Claim—Statute of Limitations—Trusts—Classification of Claims—Practice—Error without Prejudice.*

1. A trust, to be exempt from the operation of the statute of limitations, must be direct and exclusively within the jurisdiction of equity, and the question touching it must arise between the trustee and the *cestui que trust.*

2. A claim presented against the estate of a deceased guardian thirteen years after the claimant became of age, to charge the estate for funds, most of which were received by the deceased before his appointment as guardian, is barred by the statute of limitations.

3. In the case presented, the trust, if any, was neither direct nor within the exclusive jurisdiction of equity.

4. An objection to the classification of a claim allowed against an estate can not be first raised in this court.

5. An error without prejudice to the appellant, is not sufficient ground for reversal.

[Opinion filed May 25, 1888.]

APPEAL from the Circuit Court of Vermilion County; the Hon. C. B. SMITH, Judge, presiding.

Mr. W. R. LAWRENCE, for appellant.

It is a well settled rule that the statute of limitations does not apply in case of an express continuing trust, until there has been some open, express denial by the trustee of the right of the *cestui que trust.* Hill on Trustees (2d Am. Ed.), 372, note 2 and authorities cited; Wood on Limitation of Actions, 414; Albrecht v. Wolf, 58 Ill. 189; Bond v. Lockwood, 33 Ill. 218.

A guardian appointed upon his own application by a court, becomes, under the language of the statute and by the principles of the common law, the trustee of an express trust. His powers and duties are specifically defined by the statute. And

while his control of the person of the ward ceases at majority and his right of possession of his ward's property also ceases, yet he can not benefit by his neglect and failure to settle with his ward at this time and be released from his trust by the court appointing him.   The trust continues until such release, Schouler on Domestic Relations, Sec. 321; Bond v. Lockwood 33 Ill. 218; Rev. Statutes, 1874, Chap. 64, Sec. 15; Davis v. Harkness, 1 Gilm. 180; Farman v. Brooks, 9 Pick. 212; In re Steele, 65 Ill. 322.

Should it be urged that the relation of trustee and *cestui que trust* ceased when the ward became of age, yet in a case very much like this, Scheel v. Eidman, 77 Ill. 301, where the wards, after majority, filed a claim against the estate of their deceased guardian for money received by him as guardian, and the statute of limitations was interposed by the administrator, the court held that the statute of limitations did not run so long as a suit could be maintained on the bond of the guardian. In this case the cause of action could not be said to have accrued, in any view of it, until the majority of the ward, which was October 28, 1873.   Her guardian died February 9, 1886, and she filed the claim February 5, 1887.   But it is said by the Supreme Court in Gilbert v. Guptil, 34 Ill. 139, that the relation of guardian and ward subsists until he has fully accounted and paid over the balance against him.   This is a very just view, otherwise the guardian could acquire the right to his ward's property by means of his own neglect of duty.

It may be said that if the rule we contend for be true, then we are limited to a recovery of the amount of the bond.   And this is evidently the view taken by the court below, when it gave judgment for $56.   In the case of Scheel v. Eidman, above cited, the amount of the bond is not shown, yet the ward's estate was shown to have been at date of appointment, $624, and it is presumed the bond was double this sum—$1,248 —while the amount of the judgment affirmed was $1,522. Had appellant's claim been based upon the bond, then it is clear her recovery would have been limited to the amount of the penalty of the bond.   It would have been purely a legal

action in its character, in such case, and the question of limitation could not have arisen. This remedy would have been entirely inadequate; hence the necessity to resort to equitable relief, being in the nature of a bill for an accounting, by filing a claim against the estate. And it does not lie in the mouth of the guardian's administrator to say our remedy is upon a bond given by him in the inadequate sum of one-tenth of the estate of his wards, actually in his hands at the time he gave it, which he wrongfully withheld from the knowledge of the court that appointed him. As held by the Supreme Court in Davis v. Harkness, 1 Gilm. 180, one is held to account as guardian, although he did not receive the estate as the regularly appointed guardian. And this guardian in the recitals of his bond and in his oath of office, assumed to faithfully preserve the property of his ward then in his possession, and that might thereafter be received by him, and his administrator is now estopped from assuming a different position.

But we insist that the guardian's bond, or amount of it, cuts no figure in this case, except so far as it was one of the incidents in the creation of the character of the trust. The trust assumed by the guardian was express and direct, and one belonging exclusively to the jurisdiction of a court of equity; and in this case the question arises between the trustee's representative and the *cestui que trust*, thus being within the rule approved in Hayward v. Greene, 82 Ill. 289.

An action upon the bond, in this case, would be utterly inadequate, as already shown. And an action at law for money had and received could not be maintained because the trust is still open. In order for this action to lie there must have been a settlement of the account and balance struck. Perry on Trusts, Sec. 843; Hill on Trustees (2d Am. Ed.), 758.

We admit that under one view of the case the deposit of the money of the wards in a bank, at or about the time of their majority, may be a circumstance in favor of the good faith of the guardian at this time; yet it appears to have been deposited in his own name, and that he invested it in a certificate of bank stock in his own name. No investment of the

money was made under the approval of the court as the statute provided, hence he undertook the management of the estate at his peril.   McIntyre v. People, 103 Ill. 146; Hughes v. People, 111 Ill. 460; Winslow v. People, 117 Ill. 158.

Mr. J. B. MANN, for appellee.

WALL, J.   The appellant presented a claim against the estate of Joseph L. Shepherd, deceased, for the sum of $2,371.80, alleged to have been received by deceased as the guardian of the appellant.   The County Court allowed the sum of $1,555 as a seventh-class claim, from which allowance the administrator prosecuted an appeal to the Circuit Court, where an allowance was made for the sum of $56, from which an appeal is prosecuted to this court.

On the 24th of June, 1862, the deceased was, on his petition, appointed guardian of his three infant daughters, appellant being one of them.

In said petition he stated that the three infants were entitled to property from the estate of Joseph Davis, deceased, estimated at $56, due them as heirs of their mother, then deceased, who was one of the heirs of the said Joseph Davis. He was accordingly appointed and was required to give bond and surety in the sum of $112, which was done.   It does not appear that he ever made a report of his acts as guardian nor that any further order was ever made in respect to the matter by the court which so appointed him.   The evidence tends to prove that the deceased, Joseph L. Shepherd, received a considerable sum of money from the proceeds of land inherited by his wife, the mother of these girls, from her father, Joseph Davis.   This money was received by him at different times between the death of his wife, which occurred in 1857, and the year 1860, the last receipt being two years or more before he was appointed guardian.

The whole sum thus received was something near $1,000. Whether he then regarded this money as belonging to his children or whether he considered it his in whole or in part does not very clearly appear, but when he applied for letters

of guardianship he did not seem to think it was his. There is evidence, however, which tends to prove that at a later period he deposited in the bank of John C. Short & Co., of Danville, a sum of money which at the time of the failure of the bank, in 1873, amounted to about $2,600. This money, before and after the failure, he spoke of and referred to as "the girls' money."

On one occasion, soon after the failure, he was requested by one of the girls, Elizabeth, to settle, when he said that he had lost the money belonging to her and appellant (the other sister having died without issue) in Short's Bank; that he was working hard to accumulate the amount, and when he did, he would put it in land and fix it so the girls could have the benefit of it when they were old; that they were young and able to work but when they got old they would need it. He seemed to be angry about it and Elizabeth never spoke to him on the subject afterward. The two girls were then of age. There is also some evidence, though quite unsatisfactory, as to a recognition of the same state of facts as late as 1884, some two years before his death, but the statement made by the witness is rather indefinite and leaves the impression that there is great doubt as to what was actually said—so much so that the Circuit Court evidently gave it but little weight and it is not much pressed by counsel. It appears that the deceased had married his second wife before he was appointed guardian; that by this wife he had seven children; that the appellant and her sister Elizabeth lived with him until they married, and that, when he died, in 1886, he left an estate consisting of some four hundred acres of land, the value not given, besides personal property valued at $15,000; that he was prompt in the payment of his debts and that but very few claims had been presented against his estate.

From these facts thus briefly stated it is probable he did not consider himself under any legal obligation to account for the money lost in the bank, either because he supposed he was not bound to bear the loss and make it good, or because he did not regard the money as really belonging to the girls, though no doubt intending that they should have it. It is reasonably

certain that the girls knew what were his views as to this, and that the delay of nearly thirteen years after the younger one, the appellant, came of age, to press their claims, was not due to any want of information as to the facts. The question presented is, whether the claim is barred by the statute of limitations. The Circuit Court held that it was, except as to the amount that might be recovered upon the bond, and accordingly allowed appellant $56, being one-half of the penalty of the bond. The appellee, while not admitting the propriety of this allowance, assigns no cross-error in respect thereto, and we are therefore to consider only whether the statute of limitations was properly applied to the residue of appellant's demand.

It is insisted on behalf of appellant that this is an express or direct trust and not barred by the statute of limitations. To exempt a trust from the bar of the statute, it must be, first, a direct trust; second, it must be of the kind belonging exclusively to the jurisdiction of a court of equity; and third, the question must arise between the trustee and the *cestui que trust.* Angell on Limitations, Sec. 166; Hayward v. Gunn, 82 Ill. 385.

Angell also says, Sec. 174, that where the trustee denies the right of the *cestui que trust,* he abandons his fiduciary capacity, and the statute will apply. School Directors v. School Directors, 16 Ill. App. 654.

It is not easy to determine what is the character of the trust, if there was any in this case. The money came to the hands of the deceased before he assumed the duties of a guardian, and whether he had the right to claim it as his own, in law, or whether he felt bound to preserve it for his children, he did not seem to consider it any part of the estate which he was to handle as guardian. If, then, the character of a trust is to be impressed upon it at all, it would seem to arise by operation of law, and it would therefore belong to the class of implied trusts, and in that view the statute of limitations will be applicable. But if, as appellant argues, it is a direct trust because of the subsequent appointment as guardian, then we must hold that it is not of

that class of trusts which belong exclusively to the jurisdiction of a court of equity.

There is no reason why the appellant might not have urged her claim in a court of law during the lifetime of her father with as much propriety as to present it for allowance against his estate after his decease. It must therefore be subject to the statute.

Again, there seems but little doubt that soon after the failure of the bank, he denied his liability in a legal sense, though admitting and avowing a purpose to make a provision, in his own way and in his own time, for the benefit of the girls. In this they seem to have acquiesced, and probably because they were conscious that they had no legal claim upon him.

We are impressed with the belief that in this case, as in most cases, the statute of limitations, if successfully interposed as a bar, will work no injustice. Had the claimant pressed her demand while her father was yet alive, it is to be presumed, from what is even now disclosed, that he could have shown he was not liable. He was solvent, prompt in the payment of his debts, and no reason is apparent for withholding a valid claim until after his death.

It is urged the Circuit Court erred in not classifying the allowance made as of the sixth class.

It does not appear that the court was asked to do this, and no such ground is set out in the motion for a new trial. It should not be presented here for the first time. O. & O. R. R. Co. v. McMath, 91 Ill. 104.

We consider it not important, however. The estate is large and the claims against it are inconsiderable in amount, so that it is not material in what class the allowance is placed. Hence, if the omission were error, it should not work a reversal. The judgment of the Circuit Court will be affirmed.

*Judgment affirmed.*